***NOT FOR PUBLICATON***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OHIO SECURITY INSURANCE COMPANY,<br>          Plaintiff,<br><br>     v.<br><br>PREMIUM FOOD GROUP, INC. and NUT CRAVINGS, INC.,<br><br>          Defendants. | Civil Action No. 21-15690 (FLW)<br><br>OPINION |

<u>**WOLFSON, Chief Judge:**</u>

This declaratory judgment action arises out of a dispute over insurance policies. Plaintiff, Ohio Security Insurance Company ("Plaintiff" or "Ohio Security"), seeks a declaration with respect to its coverage obligations to defendants Premium Food Group, Inc. ("Premium Food") and Nut Cravings, Inc. ("Nut Cravings") (collectively, "Defendants"), in connection with an underlying state court action against Nut Cravings. Before this Court is Defendants' Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). (ECF No. 12.) Plaintiff opposes the Motion (ECF No. 13.), and Defendants filed a Reply. (ECF No. 14.) Plaintiff filed a sur-reply. (ECF No. 17.) For the following reasons, the case is transferred to the United States District Court for the Southern District of New York.

   I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

       A.  **The *Lancia* Action**

On April 5, 2021, Rebecca and Paul Lancia filed a civil action (the "*Lancia* Action") in the state of New Jersey against multiple defendants, including defendant Nut Cravings. In that action,

1

the Lancias claimed that Mrs. Lancia suffered multiple strokes after consuming unwashed poppy seeds. Ms. Lancia allegedly consumed poppy seed tea to treat her rheumatoid arthritis and had purchased the unwashed poppy seeds for her tea from among others, Nut Cravings. (Lancia Compl. ¶¶ 1, 4, 7.) The Lancias alleged that the various defendants, including Nut Cravings, knew or should have known that the unwashed poppy seeds sold to Ms. Lancia contained dangerous levels of the opiate alkaloids and would be used to make a poppy seed tea that qualifies as a Schedule II narcotic. (*Id*. ¶¶ 161-62, 171-79.) The underlying complaint in the *Lancia* Action set forth 11 counts against Nut Cravings, including claims for products liability; breach of warranty; negligence, and negligence per se; misrepresentation and failure to disclose; defective design under the Products Liability Act; strict liability; consumer fraud under the Consumer Fraud Act; punitive damages; loss of consortium; and negligent infliction of emotional and mental distress. (*Id*.)

### B. The Insurance Policies and Present Litigation

Premium Food, which sold poppy seeds to Nut Cravings, purchased several insurance policies in New York from Plaintiff through its insurance broker, Skyscraper Insurance Services, Inc. (*See* Insurance Policy Numbers BKS (19) 59 30 57 38, BKS (20) 59 30 57 38, and BKS (21) 59 30 57 38, ECF Nos. 1-3, 1-4, and 1-5.) The insurance policies were effective from November 13, 2018 through November 13, 2021, and they cover "bodily injury" under certain circumstances. *Id*. On March 19, 2021, prior to the filing of the *Lancia* complaint, Skyscraper Insurance Services, Inc., requested that Ohio Security Policy Number BKS (21) 59 30 57 38 be amended to include Nut Cravings as an additional named insured. (Compl. ¶ 31.) Nut Cravings was added as an additional insured effective as of March 19, 2021. (*Id*. ¶ 32.) On April 16, 2021, Nut Cravings was served with the *Lancia* complaint. (*Id*. ¶ 33.) Thereafter, on May 28, 2021, Plaintiff denied coverage to Nut Cravings on the ground that Nut Cravings was not insured under the policies

during the time of the alleged injury in the *Lancia* Action. (*Id*. ¶ 35.) Nut Cravings subsequently provided Plaintiff with a "Hold Harmless and Indemnification Agreement" dated January 16, 2018, in which Premium Food allegedly agreed to defend and indemnify Nut Cravings with respect to products liability in connection with products purchased from Premium Food. (*Id*. ¶ 36.) On July 19, 2021, Plaintiff allegedly revised its coverage decision and agreed to defend Nut Cravings in the *Lancia* Action subject to a complete reservation of rights, including its right of reimbursement for any defense or indemnity costs incurred. (*Id*. ¶ 38.) On August 19, 2021, Plaintiff filed the instant declaratory judgment action, seeking a declaration of its rights and obligations under the insurance policies. (*Id*. ¶ 40.) In the instant matter, Defendants moved to dismiss Plaintiff's action for lack of personal jurisdiction under Rule 12(b)(2). (Defendants' Motion to Dismiss ("Defs. Mot. to Dismiss"), ECF No. 12.)

## II.   PERSONAL JURISDICTION

In a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to present evidence establishing a *prima facie* case of personal jurisdiction over the defendant. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Although a court initially takes the allegations of the complaint as true, once a defendant raises a jurisdictional defense, a plaintiff bears the burden of proving that jurisdiction is proper by affidavits or other competent evidence. *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 382 (D.N.J. 2016) (citing *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)). If the court does not hold an evidentiary hearing on the motion to dismiss, however, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc.*, 384 F.3d at 96 (citing Fed. R. Civ. P. 4(e)); *see also Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 144–45 (3d Cir. 1992). "[T]he New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citations omitted). Thus, courts examine whether, under the Due Process Clause, the defendant possesses "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The two forms of personal jurisdiction are general jurisdiction and specific jurisdiction. *Metcalfe*, 566 F.3d at 334. Minimum contacts are analyzed in the context of both types of personal jurisdiction. *Id*. General jurisdiction extends beyond an entity's state of incorporation and principal place of business only where its contacts with another forum are so significant as to render it "at home" in that state. *JWQ Cabinetry, Inc. v. Granada Wood & Cabinets, Inc.*, No. 13–4110, 2014 WL 2050267, *3 (D.N.J. May 19, 2014).

Specific personal jurisdiction "allows for the exercise of personal jurisdiction over a nonresident defendant for actions arising out of the defendant's contact with the forum." *Spuglio v. Cabaret Lounge*, 344 F. App'x 724, 726 (3d Cir. 2009) (citing *Mellon Bank (East) PSFS, Nat'l Assn. v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992)). There are three steps to the specific-jurisdiction inquiry: (1) the defendant must have "purposefully directed [its] activities at [New Jersey];" (2) the litigation must "arise out of or relate to at least one of those activities;" and (3) "the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (internal quotations and citations omitted).

### III. DISCUSSION

Plaintiff contends that Defendants are subject to personal jurisdiction in New Jersey. (Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss ("Pl. Br. in Opp'n."), pp. 8-13, ECF No. 13.) However, of the two forms of personal jurisdiction, general and specific, Plaintiff only advances arguments in favor of specific jurisdiction. Plaintiff argues that specific personal jurisdiction over Defendants is proper because they, *inter alia*, purposefully availed themselves of the New Jersey forum by participating in, and demanding insurance with respect to, the *Lancia* Action. (Pl. Br. in Opp'n., p. 1.) In addition, as to Nut Cravings, Plaintiff lists the following three allegations from the underlying *Lancia* Action in support of specific jurisdiction:

> (1) 113.   Nut Cravings is engaged in the business of selling, supplying, distributing, and marketing "nuts, fruit, and gifts" throughout the United States, including to New Jersey and Missouri.
>
> (2) 114.   Defendant has sufficient contacts with the State of New Jersey by regularly selling and distributing food products in New Jersey, including unwashed poppy seeds, and by serving a market for unwashed poppy seeds in New Jersey. Defendant sold, distributed, inventoried, picked, packed, shipped, billed, and collected payment for unwashed poppy seeds which are the subject of this Complaint to [Ms. Lancia]. Defendant's contacts with New Jersey are sufficient that Defendant should reasonably expect to be brought into court in New Jersey.
>
> (3) 115.   Nut Cravings obtained their poppy seeds through importing them through the ports of Newark and/or New York City. To the extent that they sourced their poppy seeds through the Newark port/ New Jersey distributors, they subject themselves to specific jurisdiction.

(*Lancia* Compl., ¶¶ 113-15.) Defendants argue in response that the *Lancia* Action does not support jurisdiction over either Defendant in this coverage action. Further, Defendants contend that the sale of the poppy seeds at issue in the *Lancia* Action, through Amazon.com marketplace using the "Fulfillment by Amazon" service, is insufficient to establish personal jurisdiction. (Defendants'

Reply Brief in Support of Defendants' Motion to Dismiss ("Defs. Reply Br."), pp. 9-10, ECF No. 14.)

At the outset, the Court finds that general jurisdiction does not exist. As the record indicates, Defendants are New York corporations with their principal place of business in New York. (Decl. of Asher Guttman ¶¶ 4-5, ECF No. 12-2.) Further, Defendants do not have any employees, bank accounts, land or personal property, mailing addresses or telephone listings in New Jersey. (*Id*. ¶¶ 7, 10-11, 13.) As such, Defendants are not "at home" in New Jersey and are thus, not subject to general personal jurisdiction here. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Plaintiff argues that this Court should exercise specific personal jurisdiction over both Nut Cravings and Premium Food. The Supreme Court has instructed that in assessing personal jurisdiction, "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984); *see also Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("The requirements of *International Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction."). Therefore, the Court must separately assess Premium Food's and Nut Cravings' contacts with New Jersey.

### A.   Premium Food

Turning to Premium Food, Plaintiff first argues that Defendants' demand for coverage with respect to a suit pending in this forum, alone, is sufficient to establish personal jurisdiction. Plaintiff's jurisdictional theory as it relates to Premium Food fails for the simple reason that Premium Food is not named in the underlying *Lancia* Action. As such, while the policies at issue were procured by Premium Food, it did not demand a defense in a lawsuit in New Jersey; rather, Nut Cravings sought coverage as an additional insured under the policies.

Nevertheless, I find that the mere demand for a defense in an underlying suit in the forum is insufficient to establish personal jurisdiction. Indeed, if personal jurisdiction could be established exclusively on the basis of a demand for coverage in a separate lawsuit, an insured would be subject to jurisdiction in any and every jurisdiction so long as an injured plaintiff files suit in the jurisdiction, and the insured chooses to request a defense. Importantly, in that connection, while an out-of-state insured demands a defense, it did not choose to litigate in the underlying forum, such that it is purposefully availing itself of a particular forum. *See Hartford Cas. Ins. Co. v. JR Mktg., LLC*, 511 F. Supp. 2d 644, 650 (E.D. Va. 2007) (noting that defendant insureds' defense request was not purposeful in a jurisdictional sense as they did not deliberately choose to litigate in the forum). In this case, Nut Cravings, an out-of-state entity, was hailed into New Jersey state court by the Lancias, and the fact that Nut Cravings demanded coverage by Plaintiff in defense of that suit cannot be the sole basis to exercise personal jurisdiction over Premium Food, also an out-of-state entity.

Indeed, various courts have declined to exercise jurisdiction where the sole contact in question was a demand for coverage under insurance policies in the forum. *See, e.g.*, *Admiral Ins. Co. v. Briggs*, No. 302-0310, 2002 WL 1461911, at *7 (N.D. Tex. July 2, 2002) (disagreeing with insurer in declaratory judgment action that the insured, "by demanding a defense under the [Texas insurance] Policy[,] . . . ha[s] invoked the protection of Texas insurance law, and that this constitutes personal availment of Texas law sufficient to establish minimum contact with the forum"); *Am. Cas. Co. of Reading, Pa. v. River's Edge Pharms., LLC*, No. 05-525, 2006 WL 62819, at *11 (W.D. Tex. Jan. 10, 2006) (finding no purposeful availment in Texas where aside from the underlying litigation filed in Texas, all actions surrounding the issuance of the insurance policy occurred in New Mexico and goods were inspected in New Mexico) (citing *Briggs*, 2002

WL 1461911, at *8)); *Geico Gen. Ins. Co. v. M.O.*, No. 21-2164, 2021 WL 4892918, at *7 (D. Kan. Oct. 20, 2021) (finding the Texas federal district court decisions persuasive in concluding that coverage under a Kansas auto policy was an insufficient contact for the court to exercise personal jurisdiction).

Plaintiff primarily relies on *Massachusetts Bay Insurance Co., v. Portland Water District*, No. 99-487, 2000 WL 1499493 (D.N.H. May 10, 2000), an unpublished decision rendered by the District of New Hampshire.[1]  There, the defendant, a municipal corporation chartered in Maine, had contracted to dispose of wastewater plant residuals in Maine and New Hampshire. *Id*. at *1. After a young man who lived in the vicinity of the disposal site in New Hampshire died, the defendant was sued in state court in New Hampshire. *Id*. at *2.  Thereafter, the defendant notified the plaintiff insurer, through whom it had purchased insurance, and demanded that it provide for its defense and, if necessary, indemnification for any resulting damages. *Id*.  In turn, the insurer filed a declaratory judgment action in New Hampshire state court, seeking a declaration that it was not obligated to indemnify the defendant in the underlying state court tort action. *Id*. at *1. Without challenging the state court's exercise of personal jurisdiction, the defendant removed the matter to federal court and moved to dismiss for lack of personal jurisdiction. *Id*.

---

[1]  Plaintiff also relies on two other unpublished district court opinions in support of its argument that demand for a defense and indemnification within a forum is sufficient, in and of itself, for a finding of personal jurisdiction. *Evanston Ins. Co. v. Honso USA, Inc.*, No. 10-05596, 2011 WL 1362071, at *5 (N.D. Cal. Apr. 11, 2011) is readily distinguishable, however, because the Northern District of California also considered the fact that the state court had already exercised personal jurisdiction over the defendant and declined to part company with the state court on the issue. *Id*. at *4–5.  Moreover, the district court's decision in *Westport Insurance Corp.* was also not based on the sole consideration of demand for coverage in the forum state.  Indeed, in *Westport Insurance Corp. v. Wilkes & McHugh, P.A.*, No. 07-2522, 2008 WL 11320198, at *3, the defendants were also subject to personal jurisdiction in Tennessee because they had represented clients and entered into contingency fee contracts in the state.

The district court held that it had personal jurisdiction over the defendant after considering the same jurisdictional factors described, *supra*. Specifically, the court observed that allegations that the defendant (1) disposed of toxic waste in New Hampshire; (2) purchased from a New Hampshire insurance company insurance coverage it knew or reasonably could have anticipated would likely be invoked in New Hampshire; (3) was named as a defendant in the underlying state action; and (4) demanded that the insurer honor its contract by providing a defense and indemnification in such action compelled the conclusion that the declaratory judgment action arose out of the defendant's forum-state contacts and the defendant had availed itself of the privileges and protections afforded by New Hampshire law. *Id*. at *4.

To the extent Plaintiff relies on *Massachusetts Bay* to support its argument that the request for defense, alone, in the *Lancia* Action is sufficient to establish personal jurisdiction, Plaintiff's reliance is misplaced. Indeed, the district court in *Massachusetts Bay* considered the demand of a defense in the forum as only one of many contacts favoring personal jurisdiction. *See Bituminous Cas. Corp. v. Tindle Enterprises, Inc*., No. 07-1158, 2008 WL 11320193, at *4 (W.D. Tenn. Oct. 22, 2008) (explaining that the insured's "demand for defense and/or indemnity constituted factors considered by the court [in *Massachusetts Bay*], along with others, in determining the existence of personal jurisdiction in the federal action"). Furthermore, in *Massachusetts Bay*, the alleged tort was committed by an out-of-state defendant in New Hampshire, and that defendant procured its insurance from a New Hampshire insurer. *See Massachusetts Bay*, 2000 WL 1499493, at *3. Accordingly, I do not read *Massachusetts Bay* to stand for the proposition that the demand for defense in the underlying action is sufficient contact for personal jurisdiction purposes.

Next, Plaintiff argues that both Defendants, including Premium Food, purposefully availed themselves of New Jersey by importing products through the port of Newark, New Jersey and

9

selling those products to consumers in New Jersey. (Plaintiff's Sur-Reply in Opposition to Defendants' Motion to Dismiss ("Pl. Sur-reply"), pp. 2-3.). However, Plaintiff exclusively cites to the paragraphs in the complaint in the *Lancia* Action in support of its position. But, Plaintiff's reliance on allegations in a personal injury complaint to support personal jurisdiction over a party, *i.e.*, Premium Food, which is not named in the complaint, is improper. In fact, the underlying complaint alleges no facts against Premium Food. Stripped of those allegations, Plaintiff merely asserts, here, that personal jurisdiction over Premium Food exists, because "upon information and belief, [it] regularly conduct[s] business in the State of New Jersey." (Compl. ¶ 8.) General allegations of this nature, however, are insufficient to establish personal jurisdiction. *See Witasick v. Estes*, No. 11-3895, 2012 WL 3075988, at *6 (D.N.J. July 30, 2012) (finding that plaintiffs did not make a *prima facie* showing of specific jurisdiction where they only provided "general statements that the defendants conducted business in New Jersey").

What is more, Plaintiff's jurisdictional support related to the underlying personal injury dispute fails for an even more fundamental reason: the New Jersey contacts that Plaintiff raises are immaterial to the instant matter. This action involves a coverage dispute over insurance policies executed in New York between a New Hampshire corporation and two New York corporations. (Compl. ¶ 4; Decl. Asher Guttman, ¶ 4.) Premium Food purchased the insurance policies through a New York insurance broker. No New Jersey contacts were involved in the execution of the subject policies. Moreover, unlike the defendant in *Massachusetts Bay*, it appears that Premium Food did not purchase the insurance policies to cover liability flowing from its sales in any one particular forum. Rather, the policies are intended for nationwide coverage. *See Massachusetts Bay*, 2000 WL 1499493, at *4 (explaining that the defendant had "purchas[ed] (from a New Hampshire insurance company) insurance coverage it knew (or reasonably could have anticipated)

10

would likely be invoked in New Hampshire, for services to be rendered in New Hampshire"). As a result, even if the New Jersey contacts in the *Lancia* Action were attributable to Premium Food—which they are not—the declaratory judgment action does not "aris[e] out of or relat[e] to" those contacts. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017)) (alterations in original) (internal quotation marks and citations omitted). The issue of interpretation of the insurance policies "arises from the contacts relevant to the formation of the insurance agreement," which are all New York contacts. *See Northland Ins. Co. v. Berkebile Oil Co.*, No. 03-00011, 2003 WL 22995127, at *5 (W.D. Va. Dec. 12, 2003) (finding that while the distribution of defendant's products may have subjected it to suit in Virginia for a product liability action, those same contacts would not permit a Virginia court to exercise jurisdiction over the defendant in a separate contract dispute). Therefore, Plaintiff has not established personal jurisdiction over Premium Food.

### B. Nut Cravings

Similar to its arguments regarding Premium Food, Plaintiff argues that personal jurisdiction exists over Nut Cravings because it demanded coverage in the *Lancia* Action and sold its products to New Jersey residents. (*See* Pl. Br. in Opp'n., p. 12.) Having determined that a request for coverage by an out-of-state defendant in the forum is an insufficient basis to establish personal jurisdiction over that defendant, *see supra*, I turn to Nut Cravings' other alleged New Jersey contacts. Plaintiff avers that the underlying *Lancia* complaint's allegations that Nut Cravings sold, distributed, and shipped poppy seeds to New Jersey, including the poppy seeds which allegedly caused Ms. Lancia's strokes, are additional contacts that support personal jurisdiction. (*Id.*)

11

In response, Defendants contend that the mere resale of products through the Amazon.com marketplace is insufficient to establish that Nut Cravings purposefully directed activities towards New Jersey. (*See* Defs. Reply Br., p. 12.) According to an affidavit submitted by Chief Executive Officer of Nut Cravings and Premier Food, Asher Guttman, "[n]early all of Defendants' sales are made through Amazon." (Decl. of Asher Guttman, ¶ 15.) Further, Mr. Guttman explained that "all of [Nut Cravings'] sales through Amazon make use of Amazon's "Fulfilled by Amazon" service, meaning that Amazon 'store[s] [Nut Cravings'] products in Amazon's fulfillment centers, and [Amazon] pick[s], ship[s], and provide[s] customer service for these products.'" (*Id.*)

While Nut Cravings' contacts in New Jersey may subject it to specific jurisdiction in the underlying state court personal injury action, since those commercial activities may have given rise to the alleged injuries suffered by the state court plaintiffs,[2] my focus, here, is on the coverage dispute. Indeed, as I have explained *supra*, this case involves Plaintiff's declaratory judgment claim, which alleges that Nut Cravings is not covered by Premium Food's policies. Put differently, Plaintiff's claims in the declaratory action do not "arise out of or relate to" the alleged commercial activities of Nut Cravings. *O'Conner v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 318 (3d Cir. 2007) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). In other words, the fact that Ms. Lancia's alleged strokes were allegedly caused by the consumption of unwashed poppy seeds she purchased from Nut Cravings, does not give rise to the instant coverage dispute before the Court. *See Northland Ins. Co.*, 2003 WL 22995127, at *5 ("[F]or a cause of action to arise from business transacted in Virginia . . ., the activities that support the jurisdictional claim must coincide with those that form the basis of plaintiff's substantive claim.")

---

[2] The issue of personal jurisdiction over Nut Cravings in the New Jersey state court is not an issue before me, and thus, one upon which it would be inappropriate for me to opine.

12

(internal quotations and citations omitted); *Am. Cas. Co. of Reading, Pa. v. River's Edge Pharms., LLC*, No. 05-525, 2006 WL 62819, at *11 (W.D. Tex. Jan. 10, 2006) ("the issue here is [] contract interpretation which arises from contacts relevant to the formation of the insurance agreement in issue and not contacts relevant to the tubular goods inspected by [defendant]."). To re-iterate, this dispute arises out of insurance policies that were purchased by a New York Corporation in New York from a New York insurance broker. (Insurance Policy No. BKS 59305738, ECF No 1-3.). No New Jersey contacts are alleged in the execution of the subject policies. Accordingly, I am hard pressed to find that this Court would have personal jurisdiction over Nut Cravings in this coverage action. Indeed, if the Court lacks jurisdiction over both Defendants, in lieu of dismissal, I would elect to transfer this matter to the United States District Court for the Southern District of New York, where jurisdiction is proper, pursuant to 28 U.S.C. § 1631. *See Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 (3d Cir. 2002) (recognizing that under section 1631, the Court may transfer case for lack of *in personam* jurisdiction).

 Nonetheless, since I find that the Court lacks personal jurisdiction over Premium Food, I need not decide whether there is personal jurisdiction over Nut Cravings since, even if there is such jurisdiction, I nevertheless may exercise my discretion to transfer this case to the Southern District of New York. In a scenario in which venue is proper for one defendant, but not for another, the court has wide discretion pursuant to 28 U.S.C. §1406(a). Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Under the circumstances here, one option is to retain jurisdiction over one defendant and transfer the case as to the other defendant to an appropriate district. *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 296 (3d Cir. 1994) (citing *In re Fine Paper*

13

*Antitrust Litig.*, 685 F.2d 810, 819 (3d Cir.1982)); 15 Charles Alan Wright, et al., Federal Practice and Procedure § 3827 (4th ed. 2015); *see also Belt v. Fed. Bureau of Prisons*, 336 F. Supp. 3d 428, 435 (D.N.J. 2018) (finding it in the interest of justice to sever and transfer the claims against the defendants over whom the court lacked jurisdiction to an appropriate venue).  Alternatively, the district court may transfer the entire case to another district that is proper for both defendants. *Cottman Transmission Sys.*, 36 F.3d at 296.

The Third Circuit has instructed that the court "should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 33–34 (3d Cir. 1993) (internal quotations and citations omitted).  Additionally, the Third Circuit further explained in *Cottman* that "[w]hen the conduct of a co-defendant as to whom venue is proper is central to the issues raised by the plaintiff against those subject to transfer, the grant of a severance would not ordinarily be consistent with the sound exercise of discretion."  36 F.3d at 296.

Here, transfer of the entire case to another district that is proper for both Defendants is the best course of action.  Because Plaintiff's claims against Nut Cravings and Premium Food flow from the same insurance policies and Premium Food has allegedly agreed to indemnify Nut Cravings in connection with the *Lancia* Action, I find that Defendants' interests are inextricably intertwined to such an extent that severance would require litigating the same issues in different forums.  Further, severance would waste judicial resources, and inconvenience witnesses.  Because Defendants are both New York Corporations and are "at home" in New York, *Daimler*, 571 U.S. at 139 n.19, I find that in the interest of justice and substantial convenience, it is appropriate to

transfer the entire action to the Southern District of New York, where jurisdiction exists over both Defendants.

### IV.     CONCLUSION

For the foregoing reasons, the case is transferred to the United States District Court for the Southern District of New York.  An appropriate Order will follow.


**DATED**: June 30, 2022

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge
